UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JUAN ENRIQUE HERNANDEZ CARDONA, | ) ) ) ) | |
| Petitioner, | ) ) | Agency Case No.: A203-803-130 |
| v. | ) ) | Case No.: 3:25-cv-01451 |
| SCOTT LADWIG, in his official capacity as Acting Director of the New Orleans Field Office of ICE, | ) ) ) ) | |
| Respondent. | ) | |

## ORDER

Pending before the Court is an "Emergency Motion for An Order Directing the Clerk to Issue Summons" (Doc. No. 31, "Motion for Summons") and "Petitioner's Notice of Supplemental Authority and Renewed Emergency Demand for Immediate Release" (Doc. No. 35, "Motion for Immediate Release"), both of which were filed by Petitioner, Juan Enrique Hernandez Cardona. The Respondent, by and through the United States Attorney for the Middle District of Tennessee, has filed both a response (Doc. No. 40, "Response to Motion for Summons") to the first of these and a response (Doc. No. 41, "Response to Motion for Immediate Release") to the second of these. Petitioner has filed a reply (Doc. No. 42, "Reply") to both the Response to Motion for Summons and the Response to Motion for Immediate Release.

## DISCUSSION

This matter came before the Court via Petitioner's petition (Doc. No. 1, "Petition") for a writ of habeas corpus pursuant to 28 U.S.C. 2241, which originally named three Respondents. In

the interest of expediency—which is a very important consideration given that the next two days are federal holidays, that the day thereafter is one of various court closures and (most likely) severe short staffing of federal personnel, and that the weekend then follows—the Court for the most part will forego explicating the limited procedural history of this case, which was filed just a week ago (meaning that all dates referred to herein are from 2025). Instead, the reader's familiarity is presumed. However, the Court believes that it has set forth below a procedural history adequate for present purposes.

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). The primary habeas corpus statute, 28 U.S.C. § 2241, confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration related matters. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Here, Petitioner maintains that he is being held in violation of both the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1226(a). To summarize his position, it is that he has been detained on the purported basis that he is subject to detention under 8 U.S.C. § 1225(b)(2)(A)—which, when applicable, makes generally[1] detention of the alien mandatory pending removal proceedings and not subject to a bond hearing to determine whether the alien should remain detained pending removal proceedings—when in reality (according to Petitioner) he is instead subject to detention only under 8 U.S.C. § 1226(a), which makes detention discretionary and subject to a bond hearing. This is true, according to Petitioner, because (again according to

---

[1] There are three very limited exceptions to the general provision for mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *See* 8 U.S.C. § 1225(b)(2)(B). Plainly, none are applicable in Petitioner's case.

Petitioner) 8 U.S.C. § 1225(b)(2)(A) applies only to an alien who is an "applicant for admission" and is "seeking admission."

On December 16, the Court granted Petitioner's motion (Doc. No. 4, "TRO Motion") for a temporary restraining order. The temporary restraining order that was requested by Petitioner and issued by the Court (Doc. No. 6, "TRO"), was limited in scope; it served solely to prohibit the originally named Respondents from transferring Petitioner outside of the Middle District of Tennessee. The Court scheduled a hearing for December 19 essentially to determine whether the TRO should be dissolved, converted promptly into a preliminary injunction, or allowed to continue in effect pending potential conversion later into a preliminary injunction. The day before that hearing, the AUSA mentioned below filed "Defendants' Response to Petition for Writ of Habeas Corpus" (Doc. No. 22, "Response to Petition"). And shortly before the commencement of that hearing, the AUSA submitted (as Docket No. 25) what she called "Defendants' Response" to the TRO Motion.[2]

At the December 19 hearing, counsel for Petitioner appeared, as did two Assistant United States Attorneys for the Middle District of Tennessee, one of whom (called "the AUSA" both above and below) did all of the speaking for her side. The AUSA asserted—without dispute from Petitioner—that none of the originally named Respondents were proper respondents and that instead there was only one proper respondent, namely, Scott Ladwig, in his official capacity as Acting Director of the New Orleans Field Office of Immigration and Customs Enforcement. The Court accepted that representation and thus promptly thereafter had Mr. Ladwig substituted as the sole respondent, in place of all of the originally named Respondents. (Doc. No. 29). The AUSA

---

[2] At that time, the AUSA was calling the parties "Plaintiff and "Defendant," but she has more recently begun using what the Court believes is the better terminology for an action under §2241, i.e., "Petitioner" and "Respondent."

also noted that—as the Court interpreted her remarks—essentially she did not intend by her appearance to waive or forfeit any potential defenses the originally named Respondents (or, for that matter, the correct Respondent, Mr. Ladwig) might have, and the Court assured her essentially that her mere appearance and speaking at the hearing would not be taken by the Court as waiving any defenses of any Respondent(s). (On the other hand, it is apparent that whatever she has said at the December 19 hearing or in her filings was said on behalf of Respondent(s), and the Court must treat it as such).

At the hearing, the Court had a fulsome discussion with counsel regarding the merits of the Petition, explaining in some detail why the Court was then of the opinion that Petitioner's view was meritorious and that the AUSA's view (which the Court understands is by no means necessarily a view of her own choice or creation) was not. However, the Court announced that it could not yet conclude that service of process had either been effectuated or waived. The Court also announced that the issue of service must be resolved before the Court could rule conclusively on the merits of the Petition or, for that matter, grant any relief beyond allowing the TRO to remain in place for the time being.[3] Upon recent briefing submitted by the parties, it appears that the Court can resolve the issue of service of process, the Court's findings on which are discussed in detail below. And it also now appears to the Court that it now can and should resolve the Petition as a whole, there being no good reason for delay under the applicable circumstances.

With respect to the discussion below, the Court perceives that all arguments made by the AUSA are properly treated as arguments on behalf of the current Respondent. This is true for arguments made both before and after Mr. Ladwig was substituted in as the sole Respondent. Such

---

[3] The Court also noted that the TRO would need to be revised to be slightly less restrictive, to allow for Petitioner to be transferred from the Middle District of Tennessee to the Western District of Tennessee (where there exists an ICE detention facility) for the time being. The Court soon thereafter entered an order (Doc. No. 32) amending the TRO to allow for such transfer.

treatment is appropriate because the AUSA represented all arguments to be those of the Respondent(s) at the time in question, and she has never indicated that arguments presented by the originally named Respondents have been refuted by Mr. Ladwig or otherwise do not represent his position.

**I. Service Has Been Effectuated.**

Counsel for Respondent maintains that Respondent has avoided waiving the defense of insufficient service by filing a limited notice of appearance (Doc. No. 10) and raising the defense of insufficient service in the Response to Petition (Doc. No. 22 at 1, n.1). In general, a defense of insufficient service of process is waived if the party wishing to assert it fails to do so by means of a motion under Rule12(b) or in a responsive pleading. *See* Fed. R. Civ. P. 12(h)(1). It is true, as indicated below, that insufficient (including entirely non-existent) service is a defense that sounds in personal jurisdiction. But there is a notable distinction between service of process and personal jurisdiction: service of process is simply the means by which a defendant receives notice of an action and is formally brought within a court's jurisdiction, whereas personal jurisdiction concerns the fairness of requiring a defendant to appear and defend in a distant forum. *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012).

The Sixth Circuit has found that it is easier to find forfeiture of an insufficiency-of-service defense than forfeiture of a personal jurisdiction defense. (*Id.*) However, "without proper service of process, consent [to jurisdiction], waiver [of a personal jurisdiction defense], or forfeiture [of a personal jurisdiction defense], a court may not exercise personal jurisdiction over a named defendant." (*Id.* at 655. "[T]o preserve the defense of lack of personal jurisdiction, a defendant need only state the defense in its first responsive filing and need not articulate the defense with any rigorous degree of specificity." (*Id*. at 657 (quoting *Mattel, Inc. v. Barbie–Club.com*, 310 F.3d

293, 307 (2d Cir. 2002)). Here, counsel for Respondent has asserted —albeit in bare-bones fashion—at the start of the Response to Petition that "service has not properly occurred pursuant to [Rule] 4 . . .." (Doc. No. 22 at 1). The Court finds that this proclamation is sufficient under the Rules to preserve the defense of personal jurisdiction.

Petitioner argues via his Motion for Immediate Release that filing a comprehensive 23-page Response to Petitioner's motion for a Temporary Restraining Order, rather than a limited one, is evidence of counsel for Respondent participating in litigation on the merits, and therefore, moots service defects. (Doc. No. 35 at 5) (citing *Boulger v. Woods*, 917 F.3d 471, 477 (6th Cir. 2019)). True, asserting a Rule 12(b) defense in a responsive pleading "do[es] not preserve the defense in perpetuity." *King*, 694 F.3d at 658 (quoting *Burton v. N. Dutchess Hosp.,* 106 F.R.D. 477, 481 (S.D.N.Y.1985)). A defendant is "required at some point to raise the issue by motion for the court's determination," and waiting too long to do so can forfeit the defense. (*Id*.) However, the Sixth Circuit requires "voluntary, active, and *extensive* participation in the litigation" to indisputably give a "reasonable expectation that [a party would] defend the suit on the merits."[4] *King*, 694 F.3d at 660 (quoting *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (emphasis added)). The Court

---

[4] In *King*, the Sixth Court explained that the defendant (in his individual capacity) remained completely silent on the defense of service—which he raised via his answer—from the time of his answer until the summary judgment stage over one year later and, during that span of silence, participated extensively in the litigation in the following ways:

- Meeting with plaintiffs' counsel and then filing with the district court a joint report under Civil Rule 26(f);
- *Voluntarily participating in full discovery on the merits*;
- Moving to amend the scheduling order to extend the deadline for expert witness disclosures;
- Joining plaintiffs' request to extend discovery; and
- Attending a status conference to discuss the progress of the action and the justification for extending the pretrial deadlines.

*King v. Taylor*, 694 F.3d 650, 660 (6th Cir. 2012) (emphasis added). This degree of "extensive" participation in litigation is simply not present in the instant matter, especially given its short duration.

does not find that there has been extensive participation by Respondent in litigation; rather, counsel for Respondent has continued to appear to a limited extent[5]—by which the Court does not mean to refer to the outdated notion of a "special appearance," which the Federal Rules of Civil Procedure have done away with—throughout the short life of this emergency matter, largely to raise jurisdictional arguments,[6] while preserving a defense of insufficient service. Thus, the Court finds that Respondent has not waived that defense.

But although that defense has not been waived, it has been overcome. To serve an official with a federal agency (like Respondent) sued in his or her official capacity, a plaintiff (or petitioner) must comply with the rules for serving the United States. Fed. R. Civ. P. 4(i)(2). And to do that, Rule 4(i)(1) requires a party to:

> (A) (i) *deliver a copy* of the summons and of the complaint to the United States attorney for the district where the action is brought--or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk--*or*
> (ii) *send a copy* of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>
> (B) *send a copy* of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; *and*
>
> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i)(1) (emphasis added). The briefing and other submissions before the Court demonstrate that that service of process actually has occurred here. Petitioner shows via his Motion for Immediate Release that he has (first and foremost) served Respondent with both the original

---

[5] On at least one occasion, counsel for Respondent participated upon express direction from the Court to file a response to the Motion for Summons. (Doc. No. 36).

[6] On the other hand, Respondent (and, for that matter, Petitioner) *has* been heard sufficiently on the merits for the Court to find it appropriate to decide the merits conclusively, now.

and updated summonses;[7] effectuated service on the United States Attorney for the Middle District of Tennessee on December 22, 2025, via Certified Mail addressed specifically to the Civil Process Clerk (Tracking No. 9589 0710 5270 1567 3153) pursuant to Rule 4(i)(1)(A)(ii); and pursuant to Rule 4(i)(1)(B), perfected the "national" prong of service by mailing the Summons and Petition to the United States Attorney General on both December 18 (Tracking No. 9589 0710 5270 3256 5239) and December 20 (Tracking No. 9589 0710 5270 2743). (Doc. No. 35 at 4-5). Respondent affirmed via his Response to the Motion for Summons that his counsel received copies of the summons issued to Respondent and the U.S. Attorney General. (Doc. No. 40 at 1). It is clear that Petitioner has followed Rule 4(i), and counsel for Respondent in essence has affirmed Petitioner's compliance with Rule 4(i)(1)(A)(ii).

To be sure, Respondent does not contest that he has been actually served with process (a summons and a copy of the Petition) or that his counsel has received a copy of the summons and a copy the Petition. Respondent instead raises the argument that a summons should have been *issued to* (as opposed to served on) the United States Attorney for the Middle District of Tennessee. (Doc. No. 40 at 1).[8] But nowhere does Rule 4(i)(1) require a party seeking to serve the United States to *issue* a summons to the United States Attorney for the district where the action is brought

---

[7] A signed return of summons was filed with the Court on December 23, 2025, (Doc. No. 44). Also, Respondent verified via his Response to Motion for Summons that the "certified mailings" were received (Doc. No. 40 at 1 (citing Doc. Nos. 34-1, 34-2)), and according to the Notice of Supplement Service those "certified mailings" included the updated summons and Petition (Doc. No. 34 at 2).

[8] This position by counsel for Respondent explains Petitioner's request via his Motion for Summons for this Court to direct the Clerk's office to issue summons to United States Attorney for Middle District of Tennessee and the Attorney General of the United States, and affirms Petitioner's assertion that "the United States Attorney's Office refuses to accept service of process unless the summons explicitly lists its office's name on the summons." (Doc. No. 31 at 1) (emphasis omitted).

or the Attorney General of the United States at Washington, D.C.[9] Accordingly, the Court finds unpersuasive Respondent's argument about needing a summons to be issued to someone other than Mr. Ladwig in order for service upon Mr. Ladwig (via service upon the United States under Rule 4(i)(1)) to be "perfected."

Because the Court finds that service has been effected here, it also finds that the Motion for Summons (Doc. No. 31) must be **denied** as moot, since there is no need (or basis, for that matter) to issue summonses for United States Attorney for the Middle District of Tennessee or the Attorney General of the United States.

## II. Petitioner Was Unlawfully Detained under 8 U.S.C. § 1225(b).

In the Court's view, the issue of service was the only potential impediment to this Court exercising jurisdiction herein and ruling on the merits of the Petition. Having found that service, pursuant to Rule 4(i), has been effectuated here, the Court will now rule on the merits. It is clear both that the parties have said what they have to say on the merit-based issues and that the Court is adequately apprised to rule on the merits of the Petition.

Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief on the alleged grounds that he is being unlawfully detained in violation of the INA. (*See generally*, Doc. No. 1).

---

[9] Federal Rule of Civil Procedure 4(a)(1)(B) makes it quite clear that a summons must "be directed to the defendant.". Moreover, "a summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served." Fed. R. Civ. P. 4(b). The only "defendant" (i.e., respondent) here is Mr. Ladwig.

Congress established two statutes which principally govern detention of noncitizens pending removal proceedings. 8 U.S.C. §§ 1225 and 1226. The first–Section 1225–is a mandatory detention provision that states:

> (2) INSPECTION OF OTHER ALIENS
>
> (A) In general
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). Key to the issues raised here, Section 1225 applies to "applicants for admission," who are noncitizens "present in the United States who [have] not been admitted." 8 U.S.C. § 1225(a)(1). All applicants for admission must undergo screening by an examining immigration officer, and if it is determined that the applicant for admission "is not clearly and beyond a doubt entitled to be admitted," they "shall be detained for" standard removal proceedings. 8 U.S.C. § 1225(b)(2)(A). The only exception to this mandatory detention provision is for noncitizens who are released "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The second statutory provision–Section 1226–provides for a discretionary detention framework. It states, in relevant part:

> (a) ARREST, DETENTION, AND RELEASE
>
> On a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
>> (1) may continue to detain the arrested alien; and
>> (2) may release the alien on—
>>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General…

8 U.S.C. § 1226(a) (emphasis added).

In the Response to the Motion for Immediate Release, Respondent reasserts the argument that "Petitioner is properly detained under 8 U.S.C. § 1225(b)."[10] (Doc. No. 41 at 2). For reasons explained during the Court's remarks during December 19 hearing (which are incorporated herein by reference), the Court fully disagrees with Respondent's argument, finding that Petitioner was unlawfully detained under 8 U.S.C. § 1225(b)—primarily because Petitioner does not fit the statutory description of the particular immigrant who can be (lawfully) detained pursuant to Section 1225(b). As recently explained by another district court:

> [F]or ICE to detain a noncitizen under § 1225(b)(2)(A), the noncitizen must be (1) an "applicant for admission," (2) who is "seeking admission," and (3) whom an immigration officer determines "is not clearly and beyond a doubt entitled to be admitted." [*Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 478-88 (S.D.N.Y. 2025)]; *see also* [*Oscar Arnoldo Rivera Esperanza v. Ladeon Francis, et al.*, No. 25-CV-8727, 2025 WL 3513983, at *4 (S.D.N.Y. Dec. 8, 2025)]

---

[10] Respondent also argues (without legal authority), as counsel for Respondent did earlier, in the Response, that Petitioner has failed to exhaust administrative remedies. (Doc. No. 41 at 2). "[T]he Supreme Court has identified three categories of statutory schemes when deciding if a specific statute" requires exhaustion. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (citing *Sims v. Apfel*, 530 U.S. 103, 107–110, (2000)). First, statutes expressly require exhaustion in their statutory text. *Id*. (citing *Sims*, 530 U.S. at 107). Second, statutes may be silent as to exhaustion, but nevertheless "permit agencies to adopt regulations detailing their internal claims-processing rules." *Id*. at 747 (citing *Sims*, 530 U.S. at 108). And third, where "neither statute nor regulation says anything about exhaustion, the Supreme Court has held that a court may still impose an implied exhaustion rule as long as the rule comports with the statutory scheme." *Id*. (citing *Sims*, 530 U.S. at 108–10). Under this third doctrine of "prudential exhaustion," the Sixth Circuit has stated that it is within the Court's "sound judicial discretion" whether to require exhaustion "[w]hen Congress has not clearly required exhaustion." *Id*.; *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).

Petitioner is not required to exhaust his administrative remedies under the particular circumstances, where Petitioner presents an issue of statutory interpretation. *See e.g. Morocho v. Jamison*, No. 5:25-CV-05930-JMG, 2025 WL 3296300, at *2 (E.D. Pa. Nov. 26, 2025) (holding that exhaustion is unnecessary where the issue presented is one of statutory interpretation); *Martinez-Elvir v. Olson*, No. 3:25-CV-589-CHB, 2025 WL 3006772, at *5 (W.D. Ky. Oct. 27, 2025) (finding that (1) because the central issue here is whether Petitioner may be detained under Section 1225 or Section 1226 of the INA—a purely legal question of statutory interpretation—agency expertise is not required "to generate a proper record and reach a proper decision." (quoting *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983)) and (2) the Sixth Circuit has held that because the BIA cannot review constitutional challenges, due process challenges typically do not require exhaustion (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006))).

Moreover, the Court, agreeing with Petitioner, finds that seeking such remedies prior to filing the Petition would be futile and that therefore exhaustion is not required. (Doc. No. 42 at 3) (citing *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 236 (6th Cir. 2006) (holding that exhaustion is not required "where pursuing such remedies would be futile or unable to afford the petitioner the relief he seeks."))

…

The INA [Immigration and Naturalization Act, 8 U.S.C. §1101 *et seq.*] does not define ["seeking admission"]. And, as the great majority of courts to consider the point have recognized, not every noncitizen who is an "applicant for admission" is "seeking admission"—these two terms have distinct meanings. *See Tumba Huamani v. Francis*, No. 25 Civ. 8110, 2025 WL 3079014, at *3 (S.D.N.Y. Nov. 4, 2025) (noting "cardinal rule of statutory interpretation that 'every clause and word of a statute should have meaning'" (quoting *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023))); *see also Esperanza*, 2025 WL 3513983, at *4–5; [*Villegas ex rel. Guzman Andujar v. Francis*, No. 1:25-CV-09199 (JLR), 2025 WL 3215597, at *4 (S.D.N.Y. Nov. 18, 2025)]; [*Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4-5 (S.D.N.Y. Nov. 26, 2025)]. The first term merely requires "presence without admission—in other words, it applies to the great number of undocumented immigrants who *currently* live in this country." *Tumba Huamani*, 2025 WL 3079014, at *3 (quoting [*J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025)] (emphasis added). The second, "seeking admission," embodies the separate concept that the noncitizen "*continue* to want to *go into*" the United States. *J.G.O.*, 2025 WL 3040142, at *3. That standard is not ordinarily met by noncitizens who (like Yao) already reside in the United States. As Judge Subramanian has aptly put the point: "[Y]ou can't go into a place where you already are." *Id.*; *see also Barco Mercado*, —— F.Supp.3d at ——, 2025 WL 3295903, at *5; *Lopez Benitez*, 795 F. Supp. 3d at 488–89; *Esperanza*, 2025 WL 3513983, at *5.

Surrounding language of the statute reinforces that these terms are not synonymous. For one, § 1225 elsewhere refers to "aliens who are applicants for admission *or otherwise seeking admission.*" 8 U.S.C. § 1225(a)(3) (emphasis added). Were the two requirements coterminous, that disjunctive formulation would be superfluous. *See, e.g.*, *Tumba Huamani*, 2025 WL 3079014, at *3; *Esperanza*, 2025 WL 3513983, at *4–5; *Villegas*, 2025 WL 3215597, at *4; *Barco Mercado*, —— F.Supp.3d at —— – ——, 2025 WL 3295903, at *4–5.

…

In contrast, § 1226 "is filled with language that would most clearly apply to people who are already here." *J.G.O.*, 2025 WL 3040142, at *4. For example, § 1226(d)(1) directs the Attorney General to "devise and implement a system" to determine whether individuals arrested for aggravated felonies by federal, state, or local authorities are noncitizens. Similarly, § 1226(c)(1)(e)(ii) directs the Attorney General to detain noncitizens who commit certain criminal offenses. And § 1226(f) confers standing on state attorneys general to bring an action against the Attorney General or DHS Secretary for injunctive relief, where a noncitizen who has been granted release from immigration detention has harmed the state or its residents.

*Yao v. Almodovar*, No. 25 CIV. 9982 (PAE), 2025 WL 3653433, at *5-6 (S.D.N.Y. Dec. 17, 2025) (infernal citations cleaned up). Agreeing with the statutory understanding of Section 1225 and 1226 as laid out above, the Court finds that Petitioner, even though qualifying as an "applicant for admission," does not qualify as someone "seeking admission." It follows that he has been unlawfully detained under Section 1225(b)(2)(A) because that provision simply does not apply to him. Accordingly, and consistent with the great majority of district courts that have ruled on this issue, the Court finds that Petitioner has been held in violation of the INA, and in particular, 8 U.S.C. § 1226(a), which the Court finds applies here and makes unlawful Petitioner's detention without a bind hearing.[11]

Of the (many) courts finding likewise, some have *conditionally* granted the writ, i.e., have ordered the petitioner's immediately release if, after a specific (small) number of days, the petitioner is not granted a bond hearing under 8 U.S.C. § 1226(a) before an immigration judge. *See, e.g.*, *Magdaleno v. Raycraft*, No. 1:25-CV-1706, 2025 WL 3637413, at *9 (W.D. Mich. Dec. 16, 2025) ("The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment or, in the alternative, immediately release Petitioner from custody.") But others have ordered the petitioner's immediate release.[12] *See Yao*, 2025 WL 3653433, at *12 (collecting cases). The Court here opts for the latter approach, finding—while acknowledging that the issue is debatable—that

---

[11] The Court declines, on the grounds of mootness, to decide separately whether Petitioner's rights under the Due process Clause of the Fifth Amendment have been violated.

[12] As for what happens after Petitioner's release, the Court will not venture to say; Petitioner is subject both to removal proceedings as whole and action under § 1226(a). But under the circumstances and in consideration of the parties' arguments, Petitioner's immediate release is the correct result at this time.

Notably, under INA regulations, a bond hearing occurs only after ICE has made its "initial [discretionary] decision to detain"—the bond hearing is not itself an initial custody determination but an act of "*re*-determination." *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (citing 8 C.F.R. § 236.1(d)(1)).

because Petitioner's rights to a bond hearing under §1226(a) have been denied, "[a] bond hearing after the fact, by definition, would not and cannot cure that constitutional violation [and that although Petitioner's] release today cannot cure his loss of liberty since December [16, the day he was detained], this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so." *Id*. at 11.

## CONCLUSION

For the reasons stated herein, the Court **DENIES** as moot the Motion for Summons (Doc. No. 31) and the Motion for Immediate Release (Doc. No. 35). Instead of granting a "motion" for immediate release, the Court will (separately) enter a judgment granting the writ unconditionally.

The Clerk is directed, once such judgment is filed, to enter judgment for purposes of Rule 58 and close the file.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE