IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JUAN ENRIQUE HERNANDEZ CARDONA, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | NO. 3:25-cv-01451 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| SCOTT LADWIG, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

This closed action arose out of the petition (Doc. No. 1, "Petition") of Petitioner, Juan Enrique Hernandez Cardona, wherein Petitioner successfully sought a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Now pending before the Court is Petitioner's "Motion for Attorney Fees and Costs Pursuant to the Equal Access to Justice Act" (Doc. No. 48, "Motion"). The Motion is accompanied by two exhibits: the declaration of Petitioner (Doc. No. 48-1) and a timesheet (Doc. No. 48-2), which details the hours spent by Petitioner's counsel in connection with this action. Respondent, Scott Ladwig, has filed a response (Doc. No. 49, "Response")[1] in opposition to the Motion. Petitioner has filed a reply (Doc. No. 50) in further support of the Motion.

For the reasons stated herein, the Motion (Doc. No. 48) is **DENIED**.

---

[1] The CM/ECF docket sheet indicates that the Response was filed by Jared Brassel, Tommy Burnside, James Rothermel, and Scott Ladwig—the former three individuals being previous (and now terminated) respondents in this action, and the latter individual being the Respondent as identified above. But the Court treats the Response as having been filed solely by Scott Ladwig, given that in a previous order (Doc. No. 29) the Court substituted Scott Ladwig as the sole respondent in this action.

<u>BACKGROUND</u>

In an order (Doc. No. 45, "Petition Order") that was entered on December 23, 2025 and addressed the merits of the Petition, the Court summarized the circumstances underlying this action. The Court repeats that summation immediately below.

> This matter came before the Court via Petitioner's petition (Doc. No. 1, "Petition") for a writ of habeas corpus pursuant to 28 U.S.C. 2241, which originally named three Respondents.

> \*\*\*

> Here, Petitioner maintains that he is being held in violation of both the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1226(a). To summarize his position, it is that he has been detained on the purported basis that he is subject to detention under 8 U.S.C. § 1225(b)(2)(A)—which, when applicable, makes generally detention of the alien mandatory pending removal proceedings and not subject to a bond hearing to determine whether the alien should remain detained pending removal proceedings—when in reality (according to Petitioner) he is instead subject to detention only under 8 U.S.C. § 1226(a), which makes detention discretionary and subject to a bond hearing. This is true, according to Petitioner, because (again according to Petitioner) 8 U.S.C. § 1225(b)(2)(A) applies only to an alien who is an "applicant for admission" and is "seeking admission."

> On December 16, the Court granted Petitioner's motion (Doc. No. 4, "TRO Motion") for a temporary restraining order. The temporary restraining order that was requested by Petitioner and issued by the Court (Doc. No. 6, "TRO"), was limited in scope; it served solely to prohibit the originally named Respondents from transferring Petitioner outside of the Middle District of Tennessee. The Court scheduled a hearing for December 19 essentially to determine whether the TRO should be dissolved, converted promptly into a preliminary injunction, or allowed to continue in effect pending potential conversion later into a preliminary injunction. The day before that hearing, the AUSA mentioned below filed "Defendants' Response to Petition for Writ of Habeas Corpus" (Doc. No. 22, "Response to Petition"). And shortly before the commencement of that hearing, the AUSA submitted (as Docket No. 25) what she called "Defendants' Response" to the TRO Motion.

> At the December 19 hearing, counsel for Petitioner appeared, as did two Assistant United States Attorneys for the Middle District of Tennessee, one of whom (called "the AUSA" both above and below) did all of the speaking for her side. The AUSA asserted—without dispute from Petitioner—that none of the originally named Respondents were proper respondents and that instead there was only one proper respondent, namely, Scott Ladwig, in his official capacity as Acting

Director of the New Orleans Field Office of Immigration and Customs Enforcement. The Court accepted that representation and thus promptly thereafter had Mr. Ladwig substituted as the sole respondent, in place of all of the originally named Respondents. (Doc. No. 29). The AUSA also noted that—as the Court interpreted her remarks—essentially she did not intend by her appearance to waive or forfeit any potential defenses the originally named Respondents (or, for that matter, the correct Respondent, Mr. Ladwig) might have, and the Court assured her essentially that her mere appearance and speaking at the hearing would not be taken by the Court as waiving any defenses of any Respondent(s). (On the other hand, it is apparent that whatever she has said at the December 19 hearing or in her filings was said on behalf of Respondent(s), and the Court must treat it as such).

(Doc. No. 45 at 1-4).[2]

On December 23, 2025, via a judgment (Doc. No. 46), which was filed separately from the Petition Order, the Court granted the Petition (and the writ of habeas corpus sought therein). In support of its decision, the Court reasoned (in the Petition Order) "that Petitioner was unlawfully detained under 8 U.S.C. § 1225(b)—primarily because Petitioner does not fit the statutory description of the particular immigrant who can be (lawfully) detained pursuant to Section 1225(b)." (Doc. No. 45 at 11). The Court went on to state, quoting (and adopting) the reasoning of another district court:

> [F]or ICE to detain a noncitizen under § 1225(b)(2)(A), the noncitizen must be (1) an "applicant for admission," (2) who is "seeking admission," and (3) whom an immigration officer determines "is not clearly and beyond a doubt entitled to be admitted." [*Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 478-88 (S.D.N.Y. 2025)]; *see also* [*Oscar Arnoldo Rivera Esperanza v. Ladeon Francis, et al.*, No. 25-CV-8727, 2025 WL 3513983, at *4 (S.D.N.Y. Dec. 8, 2025)]
>
> …
>
> The INA [Immigration and Naturalization Act, 8 U.S.C. §1101 et seq.] does not define ["seeking admission"]. And, as the great majority of courts to consider the point have recognized, not every noncitizen who is an "applicant for admission" is "seeking admission"—these two terms have distinct meanings. *See Tumba Huamani v. Francis*, No. 25 Civ. 8110, 2025 WL 3079014, at *3 (S.D.N.Y. Nov.

---

[2] "Alien" is a term that in various contexts has long had an established legal meaning that may vary just slightly across legal contexts. In the instant context (and well as other legal contexts), "alien" (as contrasted with "illegal alien") is not a derogatory term but rather simply a legal term that carries certain context-specific consequences.

4, 2025) (noting "cardinal rule of statutory interpretation that 'every clause and word of a statute should have meaning'" (quoting *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023))); *see also Esperanza*, 2025 WL 3513983, at *4–5; [*Villegas ex rel. Guzman Andujar v. Francis*, No. 1:25-CV-09199 (JLR), 2025 WL 3215597, at *4 (S.D.N.Y. Nov. 18, 2025)]; [*Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4-5 (S.D.N.Y. Nov. 26, 2025)]. The first term merely requires "presence without admission—in other words, it applies to the great number of undocumented immigrants who currently live in this country." *Tumba Huamani*, 2025 WL 3079014, at *3 (quoting [*J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025)] (emphasis added). The second, "seeking admission," embodies the separate concept that the noncitizen "continue to want to go into" the United States. *J.G.O.*, 2025 WL 3040142, at *3. That standard is not ordinarily met by noncitizens who (like Yao) already reside in the United States. As Judge Subramanian has aptly put the point: "[Y]ou can't go into a place where you already are." *Id.*; *see also Barco Mercado*, ⸺ F.Supp.3d at ⸺, 2025 WL 3295903, at *5; *Lopez Benitez*, 795 F. Supp. 3d at 488–89; *Esperanza*, 2025 WL 3513983, at *5.

Surrounding language of the statute reinforces that these terms are not synonymous. For one, § 1225 elsewhere refers to "aliens who are applicants for admission or otherwise seeking admission." 8 U.S.C. § 1225(a)(3) (emphasis added). Were the two requirements coterminous, that disjunctive formulation would be superfluous. *See, e.g., Tumba Huamani*, 2025 WL 3079014, at *3; *Esperanza*, 2025 WL 3513983, at *4–5; *Villegas*, 2025 WL 3215597, at *4; *Barco Mercado*, ⸺ F.Supp.3d at ⸺ – ⸺, 2025 WL 3295903, at *4–5.

…

In contrast, § 1226 "is filled with language that would most clearly apply to people who are already here." *J.G.O.*, 2025 WL 3040142, at *4. For example, § 1226(d)(1) directs the Attorney General to "devise and implement a system" to determine whether individuals arrested for aggravated felonies by federal, state, or local authorities are noncitizens. Similarly, § 1226(c)(1)(e)(ii) directs the Attorney General to detain noncitizens who commit certain criminal offenses. And § 1226(f) confers standing on state attorneys general to bring an action against the Attorney General or DHS Secretary for injunctive relief, where a noncitizen who has been granted release from immigration detention has harmed the state or its residents.

(Doc. No. 45 at 11-12 (quoting *Yao v. Almodovar*, No. 25 CIV. 9982 (PAE), 2025 WL 3653433, at *5-6 (S.D.N.Y. Dec. 17, 2025)). The Court agreed with the "the statutory understanding of Section 1225 and 1226 as laid out [in *Yao*]," and found that "Petitioner, even though qualifying as an 'applicant for admission,' does not qualify as someone 'seeking admission'" (Doc. No. 45 at

13) because Petitioner was *already present in the United States* at the time that he was detained, so that Section 1225(b) did not apply to Petitioner. Thus, the Court reasoned that Petitioner had "been unlawfully detained under Section 1225(b)(2)(A) because that provision simply does not apply to him." (Doc. No. 45 at 13). In so reasoning, the Court rejected the Respondent's position, which was that Section 1225(b) does in fact apply to aliens who are already present in the United States. (Doc. No. 22 at 16-18).[3]

On the same day that the Petition Order was issued and that the Petition was granted (Doc. No. 46)—that is, on December 23, 2025—judgment was entered in this action pursuant to Rule 58 (Doc. No. 47) and this case was closed.

On February 12, 2026, Petitioner filed the instant Motion, contending therein that he is entitled to attorney's fees in the amount of $14,552.18 and costs in the amount of $5.00 pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Doc. No. 48 at 1).

ANALYSIS

In order for Petitioner (who is the fee applicant in this action) to be awarded fees under the EAJA, four requirements must be met:

> (1) [] the fee applicant [must] be a prevailing party; (2) [] the government's position [must] not be substantially justified; (3) [] no special circumstances [must] make an award unjust; and (4) [] the fee applicant [must] file the requisite application within thirty days of final judgment.

*Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 129-30 (6th Cir. 2007) (citing *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990)). Because these four items are requirements, if even one of these four requirements is not met, then Petitioner could not be granted fees under the EAJA.[4]

---

[3] The Court here treats this position as that of Respondent, even though it was asserted in the response (Doc. No. 22) to the Petition, a response which was filed by previous (and now terminated) respondents in this action: Jared Brassel, Tommy Burnside, and James Rothermel.

[4] Were the rule otherwise, these would not actually be requirements.

Here, the question of whether Petitioner is entitled to fees under the EAJA hinges on whether the government's position in this action was substantially justified.[5] Petitioner contends that the government's position in this action was not substantially justified, for two reasons. First, Petitioner argues that the detention of Petitioner pursuant to 8 U.S.C. § 1225(b) (and also, presumably, the government's defense of that detention in this litigation, although the Motion does not state this explicitly) was not substantially justified, because "[t]he Court found no legal basis for Petitioner's continued detention, granting the writ unconditionally." (Doc. No. 48 at 2). Second, Petitioner asserts that the government's behavior in this action—namely, what Petitioner characterizes as the government's "Procedural Obstruction" through the "[g]overnment's refusal to accept service of process [Docs. 19, 23] and the [Petitioner's detention] facility's initial refusal to honor this Court's Release Order [Doc. 46]"—was not substantially justified (although he does not give a reason why this behavior was not substantially justified). (Doc. No. 48 at 2). In his Response, Respondent naturally disagrees with Petitioner, contending that the detention of

---

[5] Indeed, it is plain—and no party disputes—that Petitioner is the prevailing party in this action. Likewise, the Court cannot discern, and the parties do not otherwise identify, any special circumstance that would make the award of fees unjust in this action.

With that said, Respondent does contend via the Response that the Motion was not filed within thirty days of final judgment in this action and so should be denied as being untimely. (Doc. No. 49 at 1-2). This argument is unavailing. Under the EAJA, a party must file a motion for fees within thirty days of "final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). And the EAJA defines "final judgment" as a judgment that is "final and not appealable." 28 U.S.C. § 2412(d)(2)(G). Importantly, Rule 4(a) of the Federal Rules of Appellate Procedure "establishes that, in a civil case to which a federal officer [or employee] is a party, the time for appeal ends sixty days after entry of judgment." *Townsend v. Soc. Sec. Admin.*, 486 F.3d at 131 (quoting *Townsend v. Comm'r of Soc. Sec.*, 415 F.3d 578, 581 (6th Cir. 2005)). In this action, Respondent, at least at the time this action was being actively litigated, was the Acting Director of the New Orleans Field Office of ICE, and so under Rule 4(a) of the Federal Rules of Appellate Procedure, the time for an appeal of the judgment in this action—which was issued on December 23, 2025—expired on February 21, 2026 (sixty days after December 23, 2025). And so, under the EAJA, Petitioner had until March 23, 2026 (thirty days after this action became not appealable on February 21, 2026) to file a motion for fees under the EAJA.

Here, Petitioner filed the Motion on February 18, 2026, and so the Motion was plainly filed within thirty days of final judgment as that term is defined in the EAJA. And so, the Motion will not be denied as being untimely filed.

Petitioner pursuant to 8 U.S.C. § 1225(b) (and also, presumably, the government's defense of that detention in this litigation, although the Response does not state this explicitly) was substantially justified. (Doc. No. 49 at 2-3).[6]

To determine whether the government's position in this action was substantially justified, the Court must make three determinations. First, the Court must determine what is meant by the term "the government's position" as that term is used in the context of evaluating motions for fees under the EAJA; this determination is necessary because "the government's position," as that term is used in connection with the EAJA, could in theory be composed of any number of the government's actions or positions related to a litigation. Second, the Court must determine *what* the government's position is that it is evaluating in connection with *this* Motion. And third, the Court must determine whether that position was substantially justified. The Court will address these questions below.

1. <u>The Meaning of the Term "the Government's Position" and the Government's Position in this Action</u>

The Court begins by examining the meaning of the term "the government's position" and what government conduct or positions comprise "the government's position" as that term is used in the context of motions for fees under the EAJA. The EAJA defines "the government's position" (or, more precisely, the "position of the United States") to mean "the position taken by the United States in the civil action, [and] the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). Interpreting this definition, the Sixth Circuit has held that the "government's 'position' comprehends both [the] underlying [government] action [leading to

---

[6] The Response does not address whether what Petitioner calls the government's "Procedural Obstruction" was or was not substantially justified.

the litigation] and [the government's] litigation position." *Pickering v. Mukasey*, 306 F. App'x 246, 248 (6th Cir. 2009).

But both this statutory definition, and the Sixth Circuit's interpretation thereof, beg the question of what exactly comprises the government's "*litigation* position." *Id.* (emphasis added). After all, as touched on above, the government's litigation position could in theory be composed of not just the government's position on the merits of a particular claim or particular claims, but also the government's litigation conduct separate and apart from the government's position on the merits of any particular claim(s). As far as the Court can tell however, the government's "litigation position" for the purposes of evaluating a motion for fees under the EAJA is composed (solely) of the government's position on the *merits* of a particular claim or claims, rather than of *every* particular position or action the government took in the litigation at issue. *See Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 564 (6th Cir. 2021) (noting that "[t]he government's whole position includes its arguments made during litigation as well as its pre-litigation conduct," but then focusing on the government's position on the merits of particular *claims*); *United States ex rel. Wall v. Circle C Construction, LLC*, 868 F.3d 466, 471 (6th Cir. 2017) ("in this case[,] as in most cases, what matters is 'the actual merits of the Government's litigating position.'" (quoting *Pierce v. Underwood*, 487 U.S. 552, 569 (1988)); *Holman v. Vilsack*, 117. F.4th 906, 913 (6th Cir. 2024) (noting in evaluating requests for fees under the EAJA, that the Sixth Circuit has recognized "the difference 'between cases in which "the government lost because it vainly pressed a position flatly at odds with the controlling case law" and cases in which "the government lost because an unsettled question was resolved unfavorably."'" (quoting *Griffith*, 987 F.3d at 564 (quoting *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005) (Roberts, J.))).

Importantly, although the Sixth Circuit has at times referred to analyzing the government's litigation position "as a whole" in considering motions for fees under the EAJA, *E.E.O.C. v. Memphis Health Center, Inc.*, 526 F. App'x 607, 615 (6th Cir. 2013), the Sixth Circuit plainly has not used the phrase "as a whole" to convey that district courts must consider the government's behavior (or position or conduct) in a litigation beyond the government's litigation position on the *merits* of a particular claim or claims. Rather, by referring to an analysis of the government's litigation position "as a whole," the Sixth Circuit has instead established that lower courts must consider the government's litigation position in the context of *all claims* brought in a particular action and, if there is more than one claim in an action, evaluate the merits of the government's litigation position on the more prominent claim(s). *Id.* (noting that in a case with two claims, a district court "should assess, if the two [claims] are distinct, which claim is more prominent in driving the case in order to make the substantial justification determination"); *Amezola-Garcia v. Lynch*, 935 F.3d 553, 555 (6th Cir. 2016) ("the Government's position 'as a whole' must be examined when determining the 'substantial justification' question, and an EAJA application fails if the multiple claims involved in the case are 'distinct' and if the more 'prominent' claims were substantially justified."). Indeed, as the Sixth Circuit in *Griffith* noted:

> [E]ven if the government's argument on a less-prominent claim was not reasonable, its position as a whole may have been substantially justified. *Accord* [*Memphis Health Ctr.*, 526 F. App'x at 614]. When confronted with a situation in which some arguments were reasonable and some were not, we must determine "what impact that dichotomy had on the government's case as a whole" by looking at which claim was "more prominent" and whether the claims were "sufficiently intertwined legally and factually that an insubstantial justification as to one renders the entire overall position unjustified." *Id.*

*Griffith*, 987 F.3d at 564.

With these principles in mind, the Court now turns to identifying precisely what the government's position was in this case. Consistent with Court's discussion above, the Court will

identify "both [the] underlying [government] action [leading to the litigation] and [the government's] litigation position." *Pickering*, 306 F. App'x at 248. In this case, this is a rather simple inquiry. Indeed, the government position here at issue is the pre-litigation detention of Petitioner pursuant to 8 U.S.C. § 1225(b) and the subsequent government litigation position that Petitioner was lawfully detained pursuant to 8 U.S.C. § 1225(b). (Doc. No. 22 at 16-18; Doc. No. 48 at 2; Doc. No. 49 at 2-3; Doc. No. 50 at 2-3).[7]

   2.   Whether the Government's Position Was Substantially Justified

Having identified the government's position, the Court will now turn to analyzing whether that position was substantially justified. In evaluating whether the government's position was substantially justified, the Sixth Circuit has explained:

> The government bears the burden of proving substantial justification. *DeLong v. Comm'r of Soc. Sec.,* 748 F.3d 723, 726 (6th Cir. 2014).
>
> A position is "substantially justified" if the position is "'justified in substance or in the main' – that is justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565, 108 S.Ct. 2541. In other words, a position is substantially justified if "a reasonable person could think it correct" and "it has a reasonable basis in law and fact." *Id.* at 566 n.2, 108 S.Ct. 2541. This standard envisions that the government's position must be "more than merely undeserving of sanctions for frivolousness." *Id.* at 566, 108 S.Ct. 2541. However, it may be "justified even though it is not correct." *Id.* at 566 n.2, 108 S.Ct. 2541; *see also Roanoke River Basin Ass'n v. Hudson,* 991 F.2d 132, 139 (4th Cir.

---

[7] Consistent with the Court's discussion in the body of this Memorandum Opinion and Order, the Court— in considering the government's litigation position in this action— will not evaluate any of what Petitioner describes as the government's "[p]rocedural [o]bstruction" with respect to a purported "refusal to accept service of process" and the purported "initial refusal to honor this Court's Release Order" on the part of the facility at which Petitioner was detained. (Doc. No. 48 at 2).

   The Court also notes that although—as will be explained below—part of what it is considering in connection with the government's position is the government's *litigation* position, in practice the *government's* litigation position is of course the litigation position advanced by *Respondent* (or past, hence terminated, respondents) in this action. But for the sake of terminological consistency, below the Court will refer to a particular litigation position advanced by the Respondent (or past respondents) as the government's litigation position.

   Finally, the Court notes—consistent with the discussion above—that in using the term "government litigation position" the Court is describing only a *subpart* of the overall "government position," that the Court is evaluating herein; as noted above, the latter "position" is composed of both the government's prelitigation conduct *and* the government's litigation position.

1993) ("While the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong.").

When considering whether the government's position is substantially justified, we focus on the merits of that position. While "objective indicia" of reasonableness—such as a dissenting opinion, the views of other courts, "a string of losses", or a "string of successes"—may be relevant, it is "the actual merits of the Government's litigating position" that matter most. *United States ex rel. Wall v. Circle C Constr., LLC,* 868 F.3d 466, 471 (6th Cir. 2017) (quoting *Pierce,* 487 U.S. at 569, 108 S.Ct. 2541). Additionally, "[h]ere as in other areas courts need to guard against being 'subtly influenced by the familiar shortcomings of hindsight judgment.'" *Taucher v. Brown-Hruska,* 396 F.3d 1168, 1173 (D.C. Cir. 2005) (Roberts, J.) (quoting *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); *see also id.* at 1174 ("[J]ust as discovery of contraband does not establish probable cause, nor an accident negligence, nor poor returns an imprudent trustee, so too a loss on the merits does not mean that legal arguments advanced in the context of our adversary system were unreasonable."). For that reason, we distinguish between cases in which "the government lost because it vainly pressed a position 'flatly at odds with the controlling case law'" and cases in which "the government lost because an unsettled question was resolved unfavorably." *Id.* at 1174; *see also Perket v. Sec'y of Health & Hum. Servs.,* 905 F.2d 129, 135 (6th Cir. 1990) ("For the purposes of the EAJA, the more clearly established are the governing norms, and the more clearly they dictate a result in favor of the private litigant, the less 'justified' it is for the government to pursue or persist in litigation." (quoting *Spencer v. N.L.R.B.,* 712 F.2d 539, 559 (D.C. Cir. 1983))).

*Griffith*, 987 F.3d at 563-64. Consistent with the above discussion from *Griffith*, the Court will now examine whether the government's position was one "a reasonable person could think [] correct" and "[had] a reasonable basis in law and fact" so as to be substantially justified. *Pierce,* 487 U.S. at 566 n.2, In so doing, the Court first will consider the "objective indicia" of reasonableness discussed by the Sixth Circuit in *Griffith*, such as the "views [expressed by] other courts" on the government's position, *Griffith*, 987 F.3d at 563, and then will turn to the merits of the government's litigation position in this case. For the reasons described below, the Court concludes that the government's position in this action was substantially justified.

A review of the objective indicia of reasonableness as they relate to the government's position—that is, the government's pre-litigation conduct in incarcerating Petitioner pursuant to 8 U.S.C. § 1225(b) and the subsequent government litigation position that Petitioner was lawfully incarcerated pursuant to 8 U.S.C. § 1225(b)—suggests that the government's position was substantially justified. It is true, as this Court recognized in the Petition Order that, at the time that Petitioner was detained pursuant to Section 1225(b) and at the time the government was defending that detention, the "great majority of district courts" disagreed with the government's contention that Section 1225(b) could apply to aliens detained when they were already *present* in this country. (Doc. No. 45 at 13). But district courts were *not* unanimous on this point. *See e.g., Vargas Lopez v. Trump,* 802 F. Supp. 3d 1132, 1135, 1140 (D. Neb. 2025) (finding that Section 1225(b) applied to a petitioner who came to the United States in 2013); *Rojas v. Olson*, No. 25-CV-1437-BHL, 2025 WL 3033967, at *1, *6-10 (E.D. Wis. Oct. 30, 2025) (applying Section 1225(b) to alien who had been living in the United States for seven years). So, objective indicia of reasonableness support finding that the government's position in this action was substantially justified. *See Griffith*, 987 F.3d at 563 ("'objective indicia' of reasonableness" like "the views of other courts" might "be relevant" to determining whether the government's position was substantially justified); *id.* at 564 ("we distinguish between cases in which the government lost because it vainly pressed a position flatly at odds with the controlling case law and cases in which the government lost because an unsettled question was resolved unfavorably." (internal quotation marks omitted)).

The Court is mindful of the Sixth Circuit's admonition that even if certain objective indicia of reasonableness may be relevant in determining whether the government's position was substantially justified, "the actual merits of the Government's litigati[on] position" is what matters most in making this determination. So, the Court now turns to the merits of the government's

litigation position. *Griffith*, 987 F.3d at 563.[8] Here, the merits of the government's litigation position were substantially justified—even if the Court ultimately rejected this litigation position. In presenting its position to the Court (in its response (Doc. No. 22) to the Petition), the government engaged in careful statutory interpretation of Section 1225(b) and Section 1226 to advance its view that Section 1225(b) applies to aliens like Petitioner. (Doc. No. 22 at 9-18). Moreover, the government's position (again presented in its response (Doc. No. 22) to the Petition) was also explicitly based in large part on the decision of the Board of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), (Doc. No. 22 at 14-15), where the BIA found that Section 1225(b) applies to aliens, like Petitioner, who were present in the United States when they were detained. *Yajure Hurtado*, 29 I&N Dec. at 220.[9] In other words, even though the Court ultimately disagreed (and disagreed strongly) with the government's litigation position in this action, the Court concludes that the actual merits of the government's litigation position, and for that matter its pre-litigation conduct in detaining Petitioner pursuant to Section 1225(b), was substantially justified.

The Court's decision in finding the government's litigation position—and the government's position in its entirety—substantially justified is buttressed by two additional points. First, the Court notes that the government's position in this action was not, at the time it was

---

[8] The Court discerns that—although the Sixth Circuit has treated what *other courts* have said on the government's position in the past as distinct from the actual examination of the merits of the government's litigation position—what other courts have said on the government's position in the past would certainly seem to be relevant to any examination of the merits of the government's litigation position. Nevertheless, the Court has done its best to follow Sixth Circuit guidance and has accordingly treated what other courts have said on the government's position separate from the actual merits of the government's litigation position.

[9] That this was a decision on which the government, in its papers, explicitly *based* its litigation position seems to the Court distinct from the question of what other courts have said in relation to the government's position generally.

advanced, "flatly at odds with the controlling case law." *Griffith*, 987 F.3d at 564. At the time that Petitioner was detained and this action was litigated, the Sixth Circuit's decision in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) (holding that Section 1226 and not Section 1225(b) applied to the detention of aliens already present in the United States, like Petitioner), had yet to be issued. Indeed, at the time this action concluded, none of the Courts of Appeals had yet issued decisions on whether Section 1225(b) applies to aliens who are detained while already present inside the United States.

Second, the Court notes that subsequent to the resolution of this action, *two* Courts of Appeals adopted the litigation position advanced by the government in this action, *see Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Under *Griffin*, and especially given that the Court (though disagreeing with those courts) prudently is very hesitant to dub those courts' members "unreasonable" in thinking that their conclusion is correct, this further supports the Court's finding that the government's litigation position—and the government's position in its entirety—was substantially justified.

In sum, the Court concludes that the government's position, as properly understood, was one "a reasonable person could think [] correct" and "[had] a reasonable basis in law and fact," and so was substantially justified. *Pierce,* 487 U.S. at 566 n.2. Thus, Petitioner is not entitled to fees under the EAJA, and the Motion will be denied. *See Sisk v. Comm'r of Soc. Sec.,* No. 3:19-CV-00342, 2021 WL 5567073, at *3 (M.D. Tenn. Nov. 29, 2021) ("The [government's] position was substantially justified, and [so] the [movant] is not entitled to attorney's fees under the EAJA.").

<u>CONCLUSION</u>

Accordingly, the Motion (Doc. No. 48) is **DENIED**.

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE